UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS SAXTON,

                             Plaintiff,                9:25-CV-1750
                                           (AMN/PJE)
      v.

THE STATE OF NEW YORK, et al.,

                             Defendants.
_____

APPEARANCES:                              OF COUNSEL:

THOMAS SAXTON
Plaintiff, pro se
24-B-0622
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

ANNE M. NARDACCI
United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

On December 15, 2025, pro se plaintiff Thomas Saxton ("plaintiff") commenced this action by submitting a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 6 ("IFP Application"). The complaint asserted claims related to plaintiff's confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Mohawk Correctional Facility ("Mohawk C.F."). *See generally* Compl.

By Decision and Order filed on January 26, 2026 (the "January 2026 Order"), this Court granted plaintiff's IFP Application and reviewed the sufficiency of the complaint in

accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Dkt. No. 8. On the basis of that review, the Court dismissed plaintiff's complaint for failure to state a claim. *Id.* In light of plaintiff's pro se status, the Court provided plaintiff with an opportunity to amend his complaint. *Id.*

On February 23, 2026, plaintiff filed an amended complaint. Dkt. No. 11 ("Am. Compl.").

## II.   SUFFICIENCY OF AMENDED COMPLAINT

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A was discussed at length in the January 2026 Order and will not be restated in this Decision and Order. *See* Dkt. No. 8 at 2-4.

### B.  Summary of Amended Complaint

With the amended complaint, plaintiff identifies the following new defendants: Mohawk C.F., ORC J. Cieslak ("Cieslak"), Nurse Jane Doe #1 ("Nurse Doe 1"), Nurse Jane Doe #2 ("Nurse Doe 2"), and Nurse Supervisor G. Francisco ("Francisco").[1] *See generally* Am. Compl. The complaint also includes claims against previously named defendants Superintendent Montegary ("Montegary"), Superintendent Lowe ("Lowe"), Henderson, Doctor Shabbir ("Shabbir"), and Nurse Tracy Stevens ("Stevens"). *See id.* The amended complaint does not include any claims against the State of New York, a defendant previously named in the original complaint.[2] *See id.*

---

[1] The Clerk of the Court is directed to amend the Docket Report to include these defendants.

[2] The Clerk of the Court is directed to amend the Docket Report to terminate this defendant.

### 1. Issues Related to Jaw

On February 28, 2024, a nurse at Elmira Correctional Facility noticed a lump on plaintiff's left jawbone and "made a note" that plaintiff needed an ultrasound. Am. Compl. at 4. On an unknown date, plaintiff was transferred to Mohawk C.F. *Id.* Plaintiff "made medical staff," Shabirr, and "nurses" "aware" that the "lump" was impacting plaintiff's left ear. *Id.* Plaintiff wrote several grievances "making Cieslak (Mohawk Grievance Official) aware of the situation." Am. Compl. at 4. Plaintiff's grievances were denied. *Id.* Plaintiff appealed to Montegary and Lowe, but the Cieslak's decision was affirmed. *Id.*

Plaintiff "attempted to correspond" with Henderson, an employee from the Department of Health, about the situation and his need for "testing." Am. Compl. at 4. Henderson did not "write [him] back." *Id.* Plaintiff "finally spoke to her in person" and Henderson explained that, due to "the strike," "we are only sending out one medical trip a day." *Id.*

### 2. Issues Related to Urological Pain

On or around August 15, 2024, plaintiff experienced severe pain and difficulty urinating and swollen genitals. Am. Compl. at 5. Plaintiff saw the "medical staff several times" and was sent to Rome Hospital for evaluation. *Id.* Plaintiff was diagnosed with a rash and treated with ointment. *Id.* When plaintiff returned to Mohawk C.F., he continued to suffer from pain, swelling, and difficulty urinating. *Id.* Plaintiff complained for "months" to Stevens, Shabbir, and Francisco, but his complaints were "dismissed." Am. Compl. at 5.

On or around November 10, 2024, plaintiff began to experience bleeding from his penis during bowel movements. Am. Compl. at 5. Weeks later, plaintiff "was seen by urology" and "sent for multiple tests." *Id.* The urologist told plaintiff that he needed to undergo a cystoscopy and ordered the test as "urgent." *Id.* Due to the "illegal job action," the

procedure was delayed.  *Id.*  Plaintiff "brought up all of these issues" with Lowe, Henderson, and Cieslak "through the proper grievance procedures."  Am. Compl. at 5-6.

On August 12, 2025, plaintiff underwent the cystoscopy.  Am. Compl. at 6.  To date, plaintiff has not had a follow up from the procedure.  *Id.*  Plaintiff has "been put on 2 different medications without being evaluated."  *Id.*

### 3.  Issues Related to Knee

On or around February 21, 2025, plaintiff fell exiting the shower in 56B Dorm.  Am. Compl. at 6.  Plaintiff felt his knee "crack" and could not put weight on it.  *Id.*  Plaintiff was taken to medical and transported to Rome Hospital.  *Id.*  X-rays were negative.  *Id.*  When plaintiff asked for an MRI, the doctor explained that "the end result would be the same."  Am. Compl. at 6.  Plaintiff received crutches and a follow up appointment was scheduled with an orthopedist within two weeks.  *Id.*

When plaintiff returned to Mohawk C.F., Nurse Doe 2 confiscated his crutches and gave him a short walking cane.  Am. Compl. at 6.  This caused plaintiff "much pain due to bearing any weight on [his] left knee would cause it to pop out of the socket."  *Id.*  "Months" later, plaintiff was seen by a specialist.  *Id.* at 7.  The orthopedist ordered an MRI.  *Id.*  The MRI was delayed and rescheduled several times.  Am. Compl. at 6.  Plaintiff "brought this up to all named defendants through several channels including the grievance process."  *Id.*

Construing the amended complaint liberally[3], plaintiff alleges the following: (1) Eighth Amendment deliberate medical indifference; and (2) state law negligence and medical

---

[3] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised.  In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set

malpractice claims. *See generally* Am. Compl. Plaintiff seeks injunctive relief and monetary damages. *Id*. at 8.

### C. Analysis

#### 1. Eleventh Amendment

The law related to Eleventh Amendment was discussed in the January 2026 Order and will not be restated herein. *See* Dkt. No. 8 at 7. For the reasons discussed in the January 2026 Order, the Eleventh Amendment bars plaintiff's § 1983 claims for monetary damages against Mohawk C.F. *See Simmons v. Gowanda Corr. Facility,* No. 13-CV-0647, 2013 WL 3340646, at *2 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

Accordingly, plaintiff's claims against Mohawk C.F. are dismissed.

#### 2. Eighth Amendment Claims

The law related to Eighth Amendment deliberate medical indifference claims was discussed in the January 2026 Order and will not be restated herein. *See* Dkt. No. 8 at 8-9.

##### a. Jaw and Urological Issues

Even assuming, for the purposes of this review, that plaintiff's medical issues are sufficiently serious to satisfy the objective prong of an Eighth Amendment analysis, the amended complaint lacks facts to plausibly suggest that any named defendant was deliberately indifferent to the aforementioned conditions.

---

out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

Initially, the Court notes that the pleading does not include any facts to suggest that any named defendant personally provided plaintiff with medical treatment or care for his jaw or urological issues.  While plaintiff identifies Nurse Doe 1 as a defendant in the caption and list of parties, Nurse Doe 1 is not referenced anywhere in the body of the amended complaint.  Rather, plaintiff attempts to impose supervisory liability upon Shabirr, Henderson, Stevens, and Francisco claiming he "made" these defendants "aware" of his various medical issues and that he complained "for months."

The law related to personal involvement and supervisory defendants was discussed in the January 2026 Order and will not be restated herein.  Dkt. No. 8 at 6-7.  Here, the pleading lacks any facts suggesting that any individual action by any supervisory defendant violated plaintiff's constitutional rights.  While plaintiff summarily alleges that defendants were "aware" of his "issues," the pleading is devoid of facts related to how they became aware, i.e., when plaintiff notified defendants of his issues, through what means he notified defendants, defendants' response, if any, to his complaints.  Plaintiff claims he personally spoke with Henderson.  However, the pleading lacks any facts related to when this conversation occurred or where it occurred.  Moreover, the facts do not plausibly suggest that Henderson possessed any medical training, that Henderson was personally involved with plaintiff's medical care, or that Henderson was vested with any authority to order or dictate plaintiff's medical treatment at Mohawk C.F.

Plaintiff also attempts to assert Eighth Amendment claims against Ciezlak, Montegary, and Lowe based upon their receipt of "grievances."  Again, the amended complaint lacks facts related when the grievances were filed, how they were filed, the frequency of the grievances, who they were filed against, or the sum and substance of the grievances.  Even

6

assuming defendants received the grievances, this fact alone is insufficient to plausibly suggest that defendants were personally involved in the alleged wrongdoing. *See Fabrizio v. Smith,* No. 9:20-CV-0011 (GTS/ML), 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) ("In the Complaint, Plaintiff alleged that Mauro and Smith were personally involved because they failed to remedy ongoing First Amendment violations after becoming aware of the retaliation through grievances and appeals . . In light of *Tangreti,* Plaintiff's attempt to plead personal involvement based upon the denial of a grievance and/or appeals, lacks merit because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment retaliation claim."), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021); *Hendricks v. Mallozzi,* No. 9:20-CV-1035 (MAD/ML), 2022 WL 1129887, at *8 (N.D.N.Y. Jan. 14, 2022) (reasoning that the plaintiff's allegations against the defendants related solely to their denial and/or affirmation of the denial of grievances were insufficient to plausibly suggest the personal involvement), *report and recommendation adopted*, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022).

Despite being afforded an opportunity to amend his complaint, plaintiff has failed to assert a viable Eighth Amendment claim related to these medical issues. Without any supporting facts, plaintiff's conclusory allegations that defendants were aware of his "issues" and complaints are insufficient to suggest a colorable § 1983 claim against these defendants. Consequently, plaintiff's Eighth Amendment claims, related to these medical issues, are dismissed.

### b. Knee Issues

Plaintiff alleges that Nurse Doe 2 was deliberately indifferent to his medical needs when she confiscated his crutches and, instead, provided plaintiff with a "short walking cane."

An Eighth Amendment claim may arise where a defendant "intentionally interfered with [a plaintiff's] prescribed medical treatment by confiscating his crutches and cane without cause." *Rosales v. Coughlin*, 10 F.Supp.2d 261, 269 (W.D.N.Y. 1998) (denying the defendant's motion for summary judgment where the record established that the defendant repeatedly took the plaintiff's cane and interfered with his prescribed course of treatment) (citing *Covington v. Westchester County Jail*, No. 96 Civ. 7551, 1997 WL 580697 (S.D.N.Y. Sept. 18, 1997)). However, a mere disagreement with the prescribed course of treatment does not support an Eighth Amendment claim. *See Harding v. Kuhlmann*, 588 F.Supp. 1315, 1316 (S.D.N.Y. 1984) (dismissing the plaintiff's Eighth Amendment claim based upon the decision to provide an "ankle band" and "medical restriction" instead of providing crutches or a cane) *aff'd*, 762 F.2d 990 (2d Cir. 1985); *see also Levola v. Fischer*, No. 9:09-CV-0833, 2010 WL 11602538, at *10 (N.D.N.Y. Sept. 29, 2010) (noting that the plaintiff's "issues" with the decision to move him crutches to a cane constitute a "disagreement" with treatment). Here, even assuming plaintiff suffered from a sufficiently serious medical condition related to his knee, plaintiff does not allege that Nurse Doe 2 intentionally interfered with his treatment or ignored his knee issues. The amended complaint lacks facts including when Nurse Doe 2 provided a cane instead of crutches, whether plaintiff interacted with Nurse Doe 2, whether plaintiff spoke with Nurse Doe 2, or any other facts surrounding the circumstances that led to Nurse Doe 2 providing a cane instead of crutches. "Whether a cane was a better solution than crutches is beside the point, because disputes over the choice of care - as opposed to the provision of some care - do not rise to the level of a deliberate indifference claim." *Gibbs v. Pillai,* No. 3:20-CV-01119, 2024 WL 1175533, at *6 (D. Conn. Mar. 19, 2024) (reasoning that the defendant's decision to provide some sort of walking aid indicates that he was not

8

withholding treatment), *appeal dismissed sub nom. Gibbs v. Connecticut Dep't of Corr.*, No. 24-891, 2025 WL 2828722 (2d Cir. Apr. 16, 2025).

Accordingly, plaintiff's Eighth Amendment claim against Nurse Doe 2 is dismissed for failure to state a claim. To the extent that plaintiff attempts to assert claims against "all defendants" because he made them "aware" of his knee issues through the "grievances process," for the reasons set forth *supra,* those claims are also dismissed.

### 3. State Law Claims

In the January 2026 Order, the Court dismissed plaintiff's state law claims holding:

> District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a) (2000). The state law claims are parallel to plaintiff's federal claims for deliberate medical indifference. Because those claims are dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims at this early stage of the case. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299 (2d Cir. 2003).

Dkt. No. 8 at 9-10.

Despite being afforded the opportunity to amend his complaint, the amended pleading does not remedy the deficiencies in the state claims. For the reasons set forth in the January 2026 Order, plaintiff's state law claims are dismissed.

Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704–05 (2d Cir.1991); see also Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").

9

An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); s*ee also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *accord, Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997).

In this instance, plaintiff has already been provided one opportunity to amend his complaint. The deficiencies with his original complaint, identified by the court in the January 2026 Order, have not been cured with the amended complaint. Accordingly, the Court finds that any further amendment would be futile.

## IV. CONCLUSION

**WHEREFORE, it is hereby**

**ORDERED** that the amended complaint (Dkt. No. 11) is **ACCEPTED** for filing and is the operative pleading in this action; and it is further

**ORDERED** that the Clerk of the Court shall amend the Docket Report consistent with this Decision and Order; and it is further

**ORDERED** that the amended complaint (Dkt. No. 11) is **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk shall enter judgment accordingly; and it is further

10

**ORDERED** that the Clerk is directed to serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**


Dated: <u>April 3, 2026</u>
      Albany, NY

Anne M. Nardacci
U.S. District Judge